**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
**FILED**

**JUN 2 8 2005**

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-CV-104-KSF

JERRY LEE PIPER                                           PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

R. J. CORMAN RAILROAD GROUP                              DEFENDANT

The plaintiff, Jerry Lee Piper, who lists his address as 8607 Tim Tam Trail, Flushing, Michigan, 48433, has filed a *pro se* civil rights complaint alleging employment discrimination and retaliation. He alleges the defendant violated numerous federal and state statutes, as well as the various constitutional provisions. The plaintiff has filed a motion seeking to proceed *in forma pauperis* [Record No. 4], which the Court will address by separate Order.

The Court has screened this non-prisoner, fee-paid complaint under the authority of *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). *Apple v. Glenn* permits a district court to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid complaint filed by a non-prisoner if it appears the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.* at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). *Sua sponte* dismissal is also appropriate where claims lack "legal plausibility necessary to invoke federal subject matter jurisdiction." *Apple v. Glenn*, 183 F.3d at 480. Under these circumstances, amendment would not be permitted after dismissal to cure such defects.

1

DEFENDANTS

The named defendant is R. J. Corman Railroad Group ("R. J. Corman"). The plaintiff states

that R. J. Corman's address is: One Jay Station, Nicholasville, Kentucky, 40356.

CLAIMS
1. Jurisdictional Bases Alleged

The plaintiff specifically alleges that his employment discrimination/retaliation claims fall

under the following statutes and/or constitutional provisions:

(1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII");

(2) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12112 *et seq.*;

(3) the "Whisleblower" provisions of the ADA, 42 U.S.C. §12203;

(4) the Age Discrimination in Employment Act of 1969 ("ADEA"), 29 U.S.C. §§621,

623(a)(1) *et seq.*[1]

(5) the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et. seq.*;

(6) the "Whistleblower" provisions of the FLSA, 29 U.S.C. § 623;

(7) 42 U.S.C. §§§1981, 1983 and 1988;

(8) the Privacy Act of 1974, 5 U.S.C. §552;

(9) the Fourth and Fourteenth Amendments of the United States Constitution; and

(10) Kentucky statutes KRS 344.030 to 344.100.

2. Summary of Factual Allegations

The plaintiff has filed a nine-page (unnumbered), typewritten complaint. The plaintiff

---

[1]

To the extent that the plaintiff alleges the defendant discriminated against him on the basis of age, the Court construes a claim under the ADEA.

describes himself as a Native American who is a 40 Percent (%) rated Disabled American Veteran ("DAV"). He alleges that in December, 2004, he applied for a "Grounds Man II" position with R. J. Corman. He states that after numerous telephone calls and "no information" [ Complaint, ¶16], he complained to the president of R. J. Corman. He states that an unidentified individual then offered him the job and told him that he (plaintiff) would: (1) train for six months; (2) be evaluated; (3) be given a location over which he would be in charge; (4) be given a company car to use; (5) be "out [on the job] for two weeks and home for three or four days and back out again"; (6) be promised specific payment benefits; and (7) be promised other employment benefits after ninety days [Id.]. The plaintiff states that he traveled to Toledo where he underwent a Department of Transportation ("DOT") Drug Screen Test [Id., ¶17].

Plaintiff states that when he applied for the position, "it was made known to" R. J. Corman supervisors Mike Hahn and Greg Esther that although he was a 40% rated DAV, he could perform the functions of the position.[2] Plaintiff alleges that he "could still pass a DOT Physical." [Id., ¶ 17] He claims that after R. J. Corman learned about his disability, the application process stopped and the defendant rescinded the job offer and continued to seek applicants to fill the position [Id., ¶18].

The plaintiff alleges that because of his race (Native American), age, and "other factors," R. J. Corman's actions constituted racial job discrimination under Title VII [Id., ¶¶19, 21 and 23]. He further alleges that because he could perform the functions of the job with little or no accommodations, R. J. Corman's actions violated the ADA; the Fourth and Fourteenth Amendments of the United States Constitution; and KRS 344.030 [Id., ¶¶19-24]. He claims that as a result of

---

[2]

The plaintiff does not specifically state *how* his DAV rating and status was "made known" to Hahn and Esther, *i.e.*, whether he disclosed the information on his job application or whether he verbally disclosed the information to them.

3

having waited three months for "processing" and receiving a job offer from the defendant, which was then rescinded, he experienced emotional distress, pain, and suffering [*Id.*].

The plaintiff next asserts that he undertook numerous efforts, by e-mail and phone contact, to inform the defendant that his employment application had been lost; that his phone calls had not been returned; and that supervisors had been rude to him [*Id.*, ¶25]. Plaintiff claims that after he would complain about one of these issues, an unidentified person would instruct him to resubmit an employment application [*Id.*]. He alleges that an employee of the defendant, Mike Hahn, informed him that because he had complained to upper management he would not be hired, because complaining to upper management was not the way the defendant operated. The plaintiff alleges that Hahn told him that there was a bulletin board posting which explained whistle blowing and employee rights, but the plaintiff alleges that he "did not observe them anywhere." [*Id.*, ¶26]

The plaintiff next alleges that because the plaintiff had complained to the president of R. J. Corman, Hahn was verbally abusive and threatened him with physical harm. The plaintiff alleges that Hahn told him that he was lucky he was not there "because it would get ugly." [*Id.*, ¶27] The plaintiff alleges that these actions constituted retaliation for having "whistle blown, " or complained about his job offer having been rescinded. The plaintiff alleges the defendant retaliated against him for having complained about its failure to properly train its supervisors and apply human resource skills [*Id.*, ¶¶28-29]. He alleges that the defendant's conduct constituted "deliberate indifference to and disregard for the plaintiff's constitutional rights." [*Id.*, ¶31] The plaintiff alleges that the defendant should be ordered to "initiate and undertake proper training of its agents and supervisors in proper employment and harassment activities." [Complaint, ¶33]

4

Next, the plaintiff alleges that the defendant lost his job application on two occasions and that the paperwork has not been found [*Id.*, ¶¶34-37]. The plaintiff maintains that because these job applications contained confidential information such as his past payroll information, driver's license number, date of birth, and Social Security number, his privacy rights have been violated and he is now an "easy target for identity theft" [*Id.*, ¶37]. Plaintiff contends that the defendant acted with deliberate disregard in failing to safeguard his private, confidential information, and that he is therefore entitled to punitive damages for emotional distress [*Id.*, ¶¶38-39].

Finally, the plaintiff alleges that the defendant's discriminatory and retaliatory conduct, as set forth above, was not only a violation of numerous federal statutes and constitutional provisions, it was also a violation of Kentucky statutes governing unfair labor practices.

## RELIEF REQUESTED

The plaintiff seeks the following relief: (1) unspecified monetary damages, consisting of compensatory, general, consequential, special, and punitive damages; (2) legal interest on the judgment; (3) an increased judgment "to account for adverse tax consequences of an award of damages"; (4) injunctive relief in the form of an order requiring the defendant to "initiate and undertake proper training of its agents and supervisors in proper employment and harassment activities" [Complaint, ¶33]; (5) trial by jury; (6) reasonable fees and costs of suit; and (7) any and all other relief to which he may be entitled. [*See* Complaint, "Request for Relief," pp. 8-9]

## DISCUSSION
### 1. Title VII Claims

To the extent that the plaintiff claims that the defendants' actions constituted: (1) age

5

and/or race discrimination and (2) retaliation under 42 U.S.C. §2000e-3(a),[3] he has asserted these claims prematurely. Title VII requires a plaintiff alleging employment discrimination to file a timely charge of discrimination with the EEOC before bringing suit in federal court. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). When a charge of discrimination is filed, the EEOC must investigate the complaint in order to determine whether there is "reasonable cause to believe that the charge is true." 42 U.S.C. §2000e-5(b). If the EEOC determines that the complaint has a reasonable basis, it will issue a right-to-sue letter to the plaintiff. 29 C.F.R. §1601.28(b). If the EEOC does not issue a right-to-sue letter within 180 days after the charge of discrimination is filed, the plaintiff may request such a letter. 29 C.F.R. §1601.28(a).

A person *must* possess a right-to-sue letter from the EEOC in order to file suit under Title VII. *Frank's Nursery & Crafts, Inc.*, 177 F.3d at 456; *see also Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). A right-to-sue letter, while not a jurisdictional requirement, is a condition precedent to maintaining an employment discrimination claim under Title VII, 42 U.S.C. §2000e-5. *Rivers v. Baberton Board of Education*, 143 F.3d 1029, 1032 (6th Cir. 1998). A plaintiff's failure to satisfy the condition precedent of exhausting administrative remedies can result in dismissal without prejudice. *A've v. Michigan Department of Corrections*, 2000 WL 1481031,

---

[3]

In order to make a claim of either racial/sexual discrimination or retaliatory discrimination under Title VII, a plaintiff must make a showing of four separate elements:

(1)  that he engaged in activity protected by Title VII;

(2)  that this exercise of protected rights was known to the defendant;

(3)  that the defendant thereafter took adverse employment action against the plaintiff, or that the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and

(4)  that there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d at 792. {Emphasis Added}

*2 (E.D. Mich., September 28, 2000) (Only Westlaw citation is currently available). As the plaintiff does not indicate that he obtained a right-to-sue letter from the EEOC with regard to his claim of employment discrimination in the hiring process, or provide documentary evidence of such a letter, that claim is dismissed without prejudice.

### 2. Construed ADEA Claim

With regard to the plaintiff's claim of age discrimination, that claim is also prematurely before the Court. Pursuant to the provisions of the ADEA, an individual must first file a charge of discrimination with the EEOC as a jurisdictional prerequisite to filing a civil action. 29 U.S.C. §623(d); *Vinson v. Ford Motor Co.*, 806 F.2d 686, 688 (6th Cir.1986), *cert denied*, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987). *See also Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir.1998) ("The purpose of filing a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC so that the Commission may first attempt to obtain voluntary compliance with the law"); *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992). The plaintiff's age discrimination claim is dismissed without prejudice to his exhausting this claim through the EEOC.

### 3. ADA Claims

Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. *See* 42 U.S.C. §12117(a) (procedures from §2000e-5 apply to ADA claims); 42 U.S.C. §2000e-5(e)(1); 42 U.S.C. §2000e-5(f)(1); *Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir.2000). An employee may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC, because he or she has not exhausted his or her remedies. *Parry*

7

*v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000); *see also EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir.1999); *Brewer v. Cleveland Municipal School District*, 84 Fed.Appx. 570, 572, 2003 WL 23095541, **2 (6th Cir. (Ohio) December 11, 2003) ("The district court also correctly observed that if Brewer were attempting to raise a federal disability claim, she had to first exhaust her administrative remedies. *See* 42 U.S.C. §§12117(a) & 2000e-5(e)(1). . . . Brewer did not allege or demonstrate that she had done so. Accordingly, the district court properly dismissed any such claim without prejudice.").

All of the instant plaintiff's ADA claims are therefore dismissed without prejudice to his exhausting these claims with the EEOC as required by 42 U.S.C. §§12117(a) & 2000e-5(e)(1).

### 4. FLSA Claims

The plaintiff has asserted claims under the FLSA, but he has not demonstrated that the requisite employer-employee relationship existed. On the contrary, the essence of the complaint is that defendant discriminated and/or retaliated against the plaintiff in its hiring practice, and thus *prevented* the existence of an "employer-employee" relationship.

In order to establish a valid claim under the FLSA, a plaintiff must first demonstrate that he is an "employee"[4] and that the defendant is an "employer."[5] *See Donovan v. Gillmor*, 535 F.Supp. 154, 160 (N. D. Ohio 1982), *appeal dismissed*, 708 F.2d 723 (6th Cir. 1982) (five factors to be considered in making the determination of whether a worker is an "employee" under the FLSA are:

---

[4] Except as provided in paragraphs (2), (3), and (4), the term "employee" means any individual employed by an employer. 29 U.S.C. §203(e)(1).

[5]

   "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization. 29 USCA §203(d).

(1) degree of control, (2) opportunities for profit or loss, (3) investment in facilities, (4) permanency

of relation, and (5) skill required.); *Cavazos v. Foster*, 822 F. Supp. 438, 442 (W. D. Mich. 1993)

(same; additional factor added which examines the extent to which the service rendered is an integral

part of the alleged employer's business).

> "In 1938, FLSA was enacted to ameliorate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . .' 29 U.S.C. §202(a). Among other things, FLSA provisions establish a minimum wage and maximum hours for 'employees.' Sections 206 and 207. . . . Accordingly, the principle issue in the Motions before the Court is whether Plaintiffs were employees of Defendants', as defined by FLSA . . . during the 1996 and 1997 harvesting seasons.
>
> Under the FLSA, an 'employee' means 'any individual employed by an employer,' and '[e]mploy' includes 'to suffer or permit to work.' Section 203(e)(1) & (g). The definition of employ is decidedly broad.
>
>> This definition was described by then-Senator Hugo Black as 'the broadest definition that has ever been included in any one act.' *See United States v. Rosenwasser*, 323 U.S. 360, 363 n.3, 65 S.Ct. 295, 89 L.Ed. 301 (1945). The FLSA's definition is broader than the common-law definitions used by other statutory schemes. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (noting that FLSA has broader coverage than ERISA, which relies on traditional agency-law principles to determine employee status); *accord Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir.1991) (same) (citing *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)).
>>
>> *Imars v. Contractors Manufacturing Services, Inc.*, 165 F.3d 27, 1998 WL 598778, *2 (6th Cir.1998) (unpublished)."

*Elizondo v. Podgorniak*, 70 F.Supp.2d 758, 765 -66 (E.D. Mich. 1999); *see Cavazos v. Foster*, 822

F.Supp. 438, 444 (". . . the FLSA is a broadly remedial statute. The FLSA defines 'employee' as

'any individual employed by an employer,' 29 U.S.C. §203(e)(1). Its definition of 'employ' includes

'to suffer or permit to work.' 29 U.S.C. §203(g).").

In the instant case, the plaintiff alleges that he has been discriminated against in the hiring process under either Title VII or the ADA and was thus *precluded* from obtaining employment on the basis of race and/or a disability. He cannot simultaneously allege that he was an actual employee, subjected to unfair labor practices by his employer under the FLSA, because the assertions are contradictory. An FLSA claim requires the existence of an employer-employee relationship. The thrust of the instant complaint relates to alleged discrimination and/or retaliation in the application process and being denied employment under either Title VII and/or the ADA. To that extent, the plaintiff's claims would appear to fall more appropriately under the provisions of either Title VII and/or the ADA, assuming the plaintiff complies with the condition precedent of exhausting such claims with the EEOC.

The plaintiff's claims under the FLSA, including claims under the "Whistleblower" provisions of the FLSA (29 U.S.C. §623), are dismissed without prejudice.

## 5. 42 U.S.C. §1981 Claims

The plaintiff alleges in his complaint that the defendant's refusal to hire him was based upon his race (Native American/American Indian) [*see* Complaint, ¶¶21-24] and, thus, constituted racial discrimination prohibited under 42 U.S.C. §1981, which provides as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

10

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. §1981.

To succeed under §1981, plaintiff must allege and prove that defendants' actions were purposefully discriminatory and racially motivated, and may not rely entirely on conclusory allegations. *Williams v. Greendolf, Inc.*, 735 F.Supp. 137, 139 (S. D. N. Y. 1990); *see General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (plaintiffs could not bring a disparate impact claim under 42 U.S.C. §1981, since purposeful discrimination was required under §1981); *McReynolds v. Sodexho Marriott Services, Inc.*, 349 F.Supp.2d 1 (D.D.C.2004) (same); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040 (1976) (intentional discrimination must not only be pleaded, but proved); *Browder v. Tipton*, 630 F.2d 1149 (6th Cir. 1980); *Crawford v. Western Electric Co.*, 614 F.2d 1300, 1309 (5th Cir. 1980).

It appears that the emphasis of the complaint appears to be that the defendant allegedly refused to hire the plaintiff based upon his DAV, and/or the fact that the plaintiff complained to the defendant's upper management about delays in the application process. The record is not, however, sufficiently developed to allow the Court to make further determinations as to the plaintiff's racial discrimination claims under the §1981 claim. Summons will issue as to that claim.

6. 42 U.S.C. §1983 Claims

To establish a right to relief under §1983, the plaintiff must plead and prove two essential

11

elements. He must show, first, that he has been deprived of rights secured by the Constitution or

laws of the United States and, second, that the defendants allegedly depriving him of those rights

acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand

Rapids*, 23 F.3d 990 (6th Cir. 1994).

    To prevail on a §1983 claim, a plaintiff must establish that the defendant acted under color

of state law to deprive the plaintiff of a right secured by the Constitution or laws of the United States.

*See Enertech Elec., Inc. v. Mahoning County Commissioners*, 85 F.3d 257, 259-60 (6th Cir. 1996).

A plaintiff has the burden of proving that a defendant's action was "caused, controlled or directed

by the state or its agencies." *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 180

F.3d 758, 764 (6th Cir. 1999) (quoting *Burrows v. Ohio High School Athletic Ass'n*, 891 F.2d 122,

125 (6th Cir. 1989)).

    In *United States v. Lanier*, 33 F.3d 639 (6th Cir. 1994), vacated and docketed for appeal 43

F.3d 1033 (1995), the Court wrote:

> An act is under color of law when it constitutes a "'[m]isuse of power, possessed
> by virtue of state law and made possible only because the wrongdoer is clothed
> with the authority of state law.'" *United States v. Tarpley*, 945 F.2d 806, 809 (5th
> Cir. 1991) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)), *cert.
> denied*, 112 S.Ct. 1960 (1992). "[U]nder 'color' of law [also] means under
> 'pretense' of law." *Id.* (quoting *Screws*, 325 U.S. at 111). "Acts of officers who
> undertake to perform their official duties are included whether they hew to the line
> of their authority or overstep it," but, "acts of officers in the ambit of their
> personal pursuits are plainly excluded." *Screws*, 325 U.S. at 111. "[I]ndividuals
> pursuing private aims and not acting by virtue of state authority are not acting
> under color of law purely because they are state officers." *Tarpley*, 945 F.2d at
> 809.

*Id.* at 653.

    The plaintiff has named as a defendant only a private railroad company. Plaintiff has not

alleged that this corporate entity acted under color of state law or that its actions were in any way attributable to the state. Plaintiff has alleged no facts which would satisfy any of the three tests articulated by the Supreme Court in determining whether a defendant's conduct can be fairly attributed to the state. *See West v. Atkins*, 487 U.S. 42, 450 (1988) (public function test); *Adickes v. S. H. Kresse's Co.*, 398 U.S. 144, 170 (1970) (the state compulsion test); and *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-26 (1961) (symbiotic relationship or nexus test).

The plaintiff's claims asserted under 42 U.S.C. §1983 are therefore dismissed without prejudice.

### 7.  42 U.S.C. §1988 Claims

The plaintiff mentions 42 U.S.C. §1988 as a jurisdictional basis in his complaint, albeit with little discussion [Record No. 1, ¶7]. The Court construes that the plaintiff is requesting the recovery of attorney's fees as provided by §1988 (b). The statute states in relevant part as follows:

> . . . .

> (b) Attorney's fees

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. §1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. §2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. §2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. §2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. §1988(b).

The Court has dismissed the plaintiff's claims under §1983, but has ordered summons to

13

issue with respect to the claims asserted under §1981. To that extent, the plaintiff's construed claims under §1988(b) will be allowed to proceed pending further orders.

8.  Claims Under Fourth and Fourteenth
Amendments of United States Constitution

The plaintiff alleges that the defendant has violated his rights under the Fourth and Fourteenth Amendment of the United States Constitution. An unreasonable search or seizure is a violation of the Fourth Amendment, made applicable to the states through the Fourteenth Amendment. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. A "seizure" occurs when "there is some meaningful interference with an individual's possessory interests in . . . property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The plaintiff has not alleged that the defendant engaged in any "search and seizure action," as action contemplated by the Fourth Amendment. That claim is dismissed without prejudice.

The plaintiff's claims under the Fourteenth Amendment, which guarantees a citizen's right to due process of law and the right to equal protection of the laws, also require dismissal. The Fourteenth Amendment protects only against actions of the state, not against the actions of private parties. *Shelly v. Kraemer*, 334 U.S. 1, 13, 68 S. Ct. 836, 842 (1948). "The rights secured by the Equal Protection and Due Process Clauses of the Fourteenth Amendment are rights to protection against unequal or unfair treatment by the state, *not private parties... [t]here can be no claim for relief based on a violation of the Fourteenth Amendment if there was no involvement by the State.*" *Great America Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 384, 99 S. Ct. 2345, 2554

14

(1979) (Stevens, concurring) (Emphasis added); *see also Pahls v. Kesselring*, 230 F.3d 1359, 2000 WL 1290364, **3 (6th Cir.(Ohio)September 7, 2000) (Unpublished Disposition) (In action concerning repossession of property, the plaintiffs produced no evidence linking private actor defendant to actions of the state).

As discussed previously herein, the instant plaintiff has not alleged that the actions of the private party defendant were "'fairly attributable to the state.'" *Crowder v. Conlan*, 740 F.2d 447, 449 (6th Cir.1984) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *see also Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir.1996) (discussing the "public function," "state compulsion" and "nexus" tests) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992)). The plaintiff's Fourteenth Amendment claims are therefore dismissed without prejudice.

### 9. Privacy Act Claims

The plaintiff alleges that because his job application, which contained confidential information, was lost, the defendant is liable to him under the Privacy Act, 5 U.S.C. §552 *et seq*. The plaintiff's claims under this statute must be dismissed for failure to state a claim upon which relief can be granted. The Privacy Act pertains to the disclosure of information by *public agencies*, not private entities. The following authorities provide a good discussion of 5 U.S.C. §552:

> "Congress passed the Freedom of Information Act of Sept. 6, 1966, 80 Stat. 383 (1966) (codified as amended at 5 U.S.C. §552 (1988)) ("the FOIA") to provide public access to records *compiled and created by the federal government*, subject to certain limited exceptions. [5 U.S.C. §552(a)] In part, the FOIA resulted from a growing dissatisfaction with the limitations of the Administrative Procedure Act of June 11, 1946 60 Stat. 237 (codified as amended at 5 U.S.C. §§551- 559 (1988) ("the APA") which permitted inspection of certain *government* records, but failed to provide a remedy to those whose requests were denied.
>
> Unfortunately, as originally enacted, the FOIA was not successful in granting full access to *government* records. Serious gaps in the language of the law allowed

*agencies* to delay responses, to obstruct public access and to withhold information from the public. . . . In response to this problem of *agency* opposition and noncompliance, Congress amended FOIA in 1974 to require *federal agencies* to respond to requests and to produce responsive documents within certain time frames. [Act of November 21, 1974, 88 Stat. 1561 (codified as amended at 5. U.S.C. §552 (1988)]

The amended FOIA requires *agencies* to make a determination on the request within ten business days. [5 U.S.C. §552(a)(6)(A)(i)]  Under certain narrowly defined unusual circumstances, the amended FOIA grants *agencies* an extra ten business days to process a request if the *agency* provides notice of this extension to the requester. [5 U.S.C. §552(a)(6)(B)(i)-(iii)] The amended FOIA also provides for an additional undefined extension to be granted in the discretion of the court if the *federal agency* proves that it faces exceptional circumstances and that it has been processing the FOIA request with due diligence.  [5 U.S.C. §552(a)(6)(C)]

1 *Immigration Law Service* 2d §1:234 (Anna Marie Gallagher, Database updated May 2005)

(Emphasis Added).

"The new FOIA eliminates the 'properly and directly concerned' test of access to documents.  It repeatedly states that official information *of executive agencies* shall be made available 'to the public' or 'any person' and for 'public inspection' without demonstrating a need or stating a reason.[6]  The FOIA has been hailed by its supporters as milestone legislation that reversed long-standing *government* practices of secrecy."

2 *Trade Secrets Law* §12:1, Melvin F. Jager (Database updated May 2005) (Emphasis Added); *see*

*Soucie v. David*,  448 F.2d 1067, 1076 (D.C. Cir. 1971) (the chief purpose of the new FOIA was to

increase public access to governmental records by substituting limited categories of privileged

material for these discretionary standards, and providing an effective judicial remedy).

Under the facts of the instant complaint, the FOIA/Privacy Act does not provide a

jurisdictional basis for, and is in no way applicable to, the plaintiff's claim that the defendant lost

---

[6]

*See EPA v. Mink*, 410 U.S. 73, 79 (1973); *Norb v. Sears, Roebuck & Co.*, 412 U.S. 191, 196-98 (1975); and *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 191 (1975).

his job application. That claim is dismissed with prejudice.

10. <u>State Law Claims</u>

The plaintiff has asserted pendent state law claims under Kentucky statutes KRS 344.030 to 344.100. The Court may exercise supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. §1367.[7] To the extent that the Court has ordered summons to issue as to the plaintiff's claims under 42 U.S.C. §§1981 and 1988, the Court will also order summons to issue as to the plaintiff's pendent state law claims.

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** as follows:

(1) The plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., are **DISMISSED WITHOUT PREJUDICE**.

(2) The plaintiff's claims under the Americans with Disabilities Act, 42 U.S.C. §§12112 *et seq*., are **DISMISSED WITHOUT PREJUDICE**.

(3) The plaintiff's claims under the Age Discrimination in Employment Act of 1969, 29 U.S.C. §§621, 623(a)(1) *et seq*., are **DISMISSED WITHOUT PREJUDICE**.

(4) The plaintiff's claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §201 *et seq*., are **DISMISSED WITHOUT PREJUDICE**.

---

[7]

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. §1367.

17

(5)   The plaintiff's claims under  42 U.S.C. §1983 are **DISMISSED WITHOUT PREJUDICE**.

(6) The plaintiff's claims under the Fourth and Fourteenth Amendments of the United States Constitution are **DISMISSED WITHOUT PREJUDICE**.

(7) The plaintiff's claims under the Privacy Act, 5 U.S.C. § 552, are **DISMISSED WITH PREJUDICE**.

(8)   The Defendant, R. J. Corman Railroad Group, will be required to respond to the plaintiff's claims under 42 U.S.C. §§1981, 1988 and the plaintiff's pendent state law claims under KRS 344.030 to 344.100

(9) The Lexington Clerk is directed to issue summons for the defendant.

(10) The plaintiff shall be responsible for proper service of the summons and complaint under the Federal Rules of Civil Procedure, paying particular attention to **all** applicable provisions of Fed.R.Civ.P. 4.

(11) The plaintiff shall keep the Clerk of the Court informed of his current mailing address. **Failure to notify the Clerk of any address change may result in a dismissal of this case**.

(12) For every further pleading or other document he wishes to submit for consideration by the Court, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.  **If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which**

18

has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

This the 28 / day of June, 2005.

KARL S. FORESTER, SENIOR JUDGE